FILED

2009 Oct-01  AM 10:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

WALTER WRIGHT,

     PLAINTIFF,

v.                                                    CASE NO.: CV-08-J-2377-S

GESTAMP ALABAMA, INC.,

     DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 16), evidence (doc. 18), and brief in support of its motion (doc. 17), to which the plaintiff filed a brief in opposition (doc. 23) and evidence in support of its opposition (doc. 22). The defendants thereafter filed a reply (doc. 25). The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

## I. Factual Background

Plaintiff was employed by defendant. He was terminated as part of a reduction in force. The plaintiff claims that he was chosen for the termination because of his age (40) and his race (black). Plaintiff sues his past employer, for violation of Title VII, 42 U.S.C. §§ 2000e *et seq*. (Count I), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq* (Count II).

1

Defendant Gestamp is a stamping and welding facility that mainly makes parts for Mercedes.  Plaintiff depo. at 77-78.  The plaintiff applied with and was hired by defendant as a production associate in April 2004, when the defendant's facility was still under construction.  *Id.* at 72, 77; exhibit 2 to plaintiff depo.  The plaintiff was promoted to first shift team leader in November 2004.  Plaintiff depo. at 83, 86; exhibit 5 to plaintiff deposition.  The plaintiff then applied for and received a promotion to group leader in September 2006.  Plaintiff depo. at 96, 99, 101; exhibit 10 to plaintiff deposition.  A group leader is a salaried, management position. Plaintiff depo. at 103.  In this position, plaintiff was responsible for the shift and the quality of the parts produced on that shift.  *Id.* at 104-105.  Plaintiff was offered this job by Jamie Mitchell, Operations Manager, although the letter confirming this offer was sent by Larry Peck, Human Resources Manager.  Exhibit 10 to plaintiff depo.

In August 2007, the plaintiff was written up because parts on the shipping dock were mislabeled.  Plaintiff depo. at 108; defendant exhibit 12 to plaintiff deposition. The supervisor who issued this write up, Darrick Stallworth, is black.  Plaintiff depo. at 109; Stallworth affidavit, ¶¶ 2-3.  The plaintiff refused to sign the write up because he believed the labels to be correct.  Plaintiff depo. at 110.  He does not think this was based on his race and called it "just a mix up."  *Id.* at 113.  He postulated that it could have been based on his age though, because he knows other group leaders,

2

specifically Charles "Sonny" Bacchus, had more write ups than he did.[1]  *Id.* at 113-114, 141-142.

In September 2007 associates on plaintiff's shift were complaining that they did not get enough training.  Plaintiff depo. at 122-123.  The plaintiff asserts that although he was issued a Performance Improvement Plan ("PIP") as a result, all the group leaders received them at that time as well, so he has no issue with this.  *Id.* at 124-126, 129-130; exhibit 13 to plaintiff deposition.  However, he then states that he received the PIP because his associates went to his supervisors, Jamie Mitchell and Marva Morgan (the Human Resources Manager), and complained about issues with training and leadership by "Julia," the team leader.  Plaintiff depo. at 127-128.  *See also* Mitchell affidavit, ¶ 3.  Stallworth, as plaintiff's supervisor, was also issued a PIP, and the team leader was terminated.  Morgan affidavit, ¶ 11 and attachments 8-11.

In March 2008, the plaintiff received a "last chance agreement" (also called a "decision making leave") for mislabels.  Plaintiff depo. at 135-136; exhibit 15 to plaintiff depo.  He received this because he had already received a prior written warning for mislabels and this was the next step.  Morgan depo. at 15-16.  Again, the plaintiff did not agree with the write up.  He asserts it resulted from a

---

[1]Bacchus is in his 50s, and white.  Plaintiff depo. at 117.

misunderstanding in which he placed the label on the side so it could be used the next day, since the parts being made had been changed.  Plaintiff depo. at 137-138.  He noted that since he was the only group leader that routinely checked and signed labels, he should get a break. *See* Attachment 9 to Mitchell affidavit.  According to the plaintiff, this practice of placing the label to the side is something everyone did. Plaintiff depo. at 138-139.  According to Mitchell, this was a mislabel on a rack. Mitchell affidavit, ¶ 16.  He knows of no other group leader in assembly who allowed mislabeled parts to make it to the loading dock.  *Id.* at ¶ 18.  This write up was also issued by Stallworth.  Plaintiff depo. at 139-140.  Stallworth told the plaintiff that Mitchell instructed him to write up the plaintiff.  *Id.* at 140.  The plaintiff does not think this was based on his race or age, but rather because he made the comment to Mitchell that plaintiff would not "kiss no one ass."  *Id.* at 143-144, 147-148.  This was done joking around.  *Id.* at 146.  Mitchell has no memory of this conversation with plaintiff.  Mitchell affidavit, ¶ 33.

By affidavit, the plaintiff claims other mislabeled parts left the assembly area of the plant and no one else was disciplined.  Plaintiff affidavit, ¶ 4. He claims someone named "Charlie" at Mercedes said mislabels had occurred on parts for which Charles Sonny Bachus was responsible.  *Id.* at ¶ 5.  Co-employee Tony Harris states by affidavit other mislabels occurred and someone would have to go to the rack of

parts and relabel it.  Harris affidavit, ¶ 5.   His affidavit does not state anyone else who might have been responsible for such mislabels.

The plaintiff states all group leaders had quality issues, and that Anthony Jones, who is in his 30s and black, changed time for someone who was late.  Plaintiff depo. at 118-121.  Mitchell states had he known this, and it was shown to be true, Jones would have been fired.  Mitchell affidavit, ¶ 19.  By affidavit, the plaintiff claims the true reason Mitchell was unhappy with him was because he is "an assertive black man....  He was not used to a black man being assertive..."  Plaintiff affidavit, ¶ 8.

The plaintiff was terminated May 30, 2008.  Plaintiff depo. at 151; exhibit 16 to plaintiff depo.  He met with Richard Metcalf, Press Shop Manager, who was filling in for Mitchell, and Marva Morgan.  Plaintiff depo. at 151-152; Metcalf affidavit, ¶¶ 2, 5, 10.  He was told there was a reduction in force ("RIF") of group leaders, and they were reducing the number from five to three.  Plaintiff depo. at 152.  There would then only be one group leader per shift, instead of two.  Mitchell depo. at 35.  Morgan told the plaintiff that he was selected because of the "last and final" write up in his personnel file.  Plaintiff depo. at 153, 202-203.  Defendant had a policy which specified that a last and final write up would be selected for a RIF, followed by the least seniority.  Plaintiff depo. at 153; *see also* Metcalf affidavit, ¶ 7 and attachment

1 to Metcalf affidavit, at 0099; Mitchell affidavit, ¶ 10; Morgan affidavit, ¶ 7 and
Attachment 19.   The other person terminated, Cornelius Maddox (white), had the
least seniority.   Plaintiff depo. at 165-166; Mitchell depo. at 40-41.   Plaintiff was
offered a severance package, which he declined because he would have had to agree
not to sue defendant.   Plaintiff depo. at 156-157; Morgan affidavit, ¶ 25; Attachment
20 to Morgan affidavit.   Maddox and plaintiff were the only two employees laid off
at that time.   Mitchell depo. at 21-22.   Morgan specifically states that the plaintiff was
"reduced" and not "terminated."   Morgan depo. at 42.

   According to the plaintiff, "corporate" made the decision about the RIF, based
on the downturn of business at Mercedes.   Plaintiff depo. at 159-160.   Plaintiff
believes Mitchell made the decision of whom to lay off because when someone was
fired in February 2008, Mitchell made that decision.   *Id.* at 160-162, 181.   No one told
him he was terminated because of his race or age and no one said anything which led
him to that conclusion.   *Id.* at 163-165.

   In his EEOC charge, the plaintiff listed only race, not age.   Plaintiff depo. at
170-172; exhibit 17 to plaintiff depo.   The plaintiff thinks Mitchell was prejudiced
against him based on his race.   Plaintiff depo. at 171.   He basis this on his belief that
Mitchell had a problem with plaintiff for standing up to him and telling Mitchell he
was not going to "kiss ass."   *Id.* at 171-172.   The plaintiff learned later that the goal

of the RIF was to have only one group leader on each shift in assembly.  *Id.* at 183.

According to plaintiff, after he was terminated, a group leader position was posted and Joe Brunson, white, 36, replaced him.  Plaintiff depo. at 179-180, 192. However, Brunson also serves as safety manager.  *Id.* at 180.  According to the plaintiff, he is more qualified than Brunson because Brunson never worked in assembly, but plaintiff also stated that Brunson is "a pretty intelligent guy."  *Id.* at 190-191.  According to plaintiff, both Stallworth and Anthony Jones (both black), who kept their jobs, were under 40.  *Id.*.  According to Mitchell, no other group leader let mislabeled parts make it to the loading dock.  Mitchell depo. at 57.

Another group leader, Van Cunningham, was terminated in March 2008. *See* attachment 10 to Mitchell affidavit.  Metcalf forwarded Mitchell, who was working in Mexico, an email stating the plaintiff wanted to apply for Cunningham's position because it was first  shift.  Mitchell affidavit, ¶ 23.  Because Stallworth reported he was not pleased with plaintiff's performance, Mitchell decided not to move plaintiff to the first shift position.  *Id*; attachment 11 to Mitchell affidavit.  However, this left defendant one group leader short, so Brunson, who was already the safety coordinater, stated he would take on the group leader job on a temporary basis in addition to his other responsibilities.  Mitchell affidavit, ¶ 24. The first shift group leader vacancy was then posted in March 2008, and Brunson was moved into that job

7

permanently.  Mitchell affidavit, ¶ 25; attachments 13-15, 17 to Mitchell affidavit. The final decision on the RIF was not made until May 2008, although it had been discussed since the beginning of 2008.  Mitchell affidavit, ¶ 27.

Brunson moved to the second shift group leader position to cover it after plaintiff was terminated, but did not replace plaintiff.  Mitchell affidavit, ¶ 32; Mitchell depo. at 38.  No new group leaders have been hired since plaintiff's termination.  Mitchell affidavit, ¶ 32.  Defendant further had a large layoff in January 2009.  Mitchell depo. at 14, 54.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).  However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814

8

F.2d 607, 609 (11th Cir.1987).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case ....  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  A factual dispute regarding a non-material issue will not preclude

the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## III.  LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).  With these standards in mind, the court considers each of the plaintiff's claims.

### A.  Age Discrimination

The ADEA renders unlawful an employer's failing or refusing to hire or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.  29 U.S.C. § 623(a)(1); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th  Cir.2000). Liability depends on whether the plaintiff's age actually motivated the employer's decision.  His age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.  *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted).  In *Gross v. FBL Financial Svcs.*, – U.S. – , 129 S.Ct. 2343, 2351 (2009), the Supreme Court further clarified the standard under the ADEA

by explicitly stating that age must be shown as the "but for" reason for the adverse employment action. *Gross v. FBL Financial Svcs.*, – U.S. – , 129 S.Ct. 2343, 2351 (2009). The plaintiff concedes he cannot make such a showing and therefore, the defendant's motion is due to be granted on this count of the complaint.[2] See plaintiff's response, at 14. The court shall therefore grant the defendant's motion on the plaintiff's age discrimination claim by separate order.

### B.  Race Discrimination

Plaintiff asserts that the above facts constitute race discrimination under 42 U.S.C. § 2000e. As there is no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004). *See also  McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).

To prevail on his claim, the plaintiff first must establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct.

---

[2]The parties engage in a lengthy dispute as to whether the plaintiff is procedurally barred from litigating his age discrimination claim due to his failure to list age as a basis for discrimination in his EEOC charge. The court does not reach this issue, as the plaintiff concedes he cannot prevail on his age discrimination claim on its merits.

at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory

reason for the alleged discriminatory employment action. *Rojas v. Florida*, 285 F.3d

1339, 1342 (11th Cir.2002); *Harris v. Shelby County Board of Education*, 99 F.3d

1078, 1083 (11th Cir.1996). Once a defendant presents a legitimate, nondiscriminatory

reason for its action, the presumption of discrimination drops from the case. *Burdine*,

450 U.S. at 255, 101 S.Ct. at 1094 and n.10. The plaintiff must then demonstrate by

a preponderance of the evidence that the reason offered by the defendant was not the

true reason for the employment decision, but rather a mere pretext for discrimination.

*McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

As to the standard to apply in this case, the Eleventh Circuit has instructed

> In a RIF case in which a position is eliminated in its entirety, the
> plaintiff may seek to establish a prima facie case of discrimination by
> demonstrating "(1) that he was in a protected class and was adversely
> affected by an employment decision, (2) that he was qualified for his
> current position or to assume another position at the time of discharge,
> and (3) evidence by which a fact finder could reasonably conclude that
> the employer intended to discriminate in reaching that decision." *Smith
> v. J. Smith Lanier & Co.,* 352 F.3d 1342, 1344 (11th Cir.2003). To
> establish intent, [plaintiff] needed to proffer evidence that could lead a
> fact finder to conclude that "(1) [the] defendant consciously refused to
> consider retaining a plaintiff because of his [race or national origin], or
> (2)[the] defendant regarded [race or national origin] as a negative factor
> in such consideration." *Allison v. Western Union Tel. Co.*, 680 F.2d
> 1318, 1321 (11th Cir.1982).

*Padilla v. North Broward Hosp. Dist.* 270 Fed.Appx. 966, 971, 2008 WL 816664,

12

4 (11th Cir.2008).

The court questions whether the plaintiff can establish a prima facie case because of the five group leaders, two were black and three were white. The other group leader selected for termination at the same time as the plaintiff was white. One of the three group leaders retained was black. Furthermore, there is no dispute that the two individuals selected for termination were picked in accordance with the defendant employment handbook.

In discussing his prima facie case, the plaintiff offers the statement that "Mitchell was not comfortable with an independent, strong willed, assertive African Americans (sic). He had an issue with Wright because, as a black man, Wright was not deferential to him. Wright told Mitchell has (sic) was not going to 'kiss ass' when Mitchell told Wright that Wright was going to like Mitchell." Plaintiff response, at 10. This is not "evidence by which a fact finder could reasonably conclude that the employer intended to discriminate in reaching that decision." *Smith,* 352 F.3d at 1344. The court finds the plaintiff cannot satisfy his prima facie burden applying the standard from *Smith, supra*.

Because the plaintiff asserts he was unfairly accused of misconduct which was then used as the basis for his termination, the court alternatively applies the prima facie standard by which the plaintiff may show similarly situated employees who

were not black were accused of similar misconduct and not terminated. *See Jones v.*

*Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11ᵗʰ Cir.) as modified by

151 F.3d 1321 (11ᵗʰ Cir.1998).  In *Jones v. Gerwens*, the Eleventh Circuit stated

> [W]e hold that, in cases involving alleged racial bias in the application
> of discipline for violation of work rules, the plaintiff, in addition to
> being a member of a protected class, must show either (a) he did not
> violate the work rule or (b) he engaged in misconduct similar to a person
> outside the protected class and that the disciplinary measures imposed
> were more severe....  The law is clear that, even if a Title VII claimant
> did not in fact commit the violation with which he is charged, an
> employer successfully rebuts any prima facia case of disparate treatment
> by showing that it honestly believed the employee committed the
> violation.

*Jones*, 874 F.2d 1534, 1540 (11ᵗʰ Cir.1989); citing *Chaney v Southern Railway Co.*,

847 F.2d 718, 723-724 (11ᵗʰ Cir. 1988)(other citations omitted).  The plaintiff must

also show that the supervisor or foreman was aware of violations of rules by other

employees and that the known violations were consciously overlooked.  *Jones*, 874

F.2d at 1542.

The plaintiff asserts both that he really did not violate the work rule and that

other group leaders who did the same thing were not disciplined.  He argues that, "In

order to get around the seniority of Wright, the more uppity and assertive African

American, Mitchell created the mislabel discipline that is selectively applied to

Wright's and only Wright, as no other Group Leader was ever disciplined for

mislabels."  Plaintiff's response, at 11.  While the plaintiff does provide evidence that

other mislabels occurred and no group leader was disciplined for them, the plaintiff has offered no evidence that any other group leader initialed the mislabels parts as ready to ship, or even which group leader may have had responsibility for the parts in question.

Even assuming the plaintiff could satisfy one of the two applicable prima facie burdens, the defendant offered a legitimate, non-discriminatory reason for its actions, namely that the plaintiff was chosen for the RIF because he had a last chance write up in his personnel record and under their policy, that caused him to be selected first for the RIF.  The plaintiff must demonstrate by a preponderance of the evidence that this reason was pretextual, which the plaintiff has failed to do.  To demonstrate pretext, the plaintiff must meet the employer's proffered nondiscriminatory reason "head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000).  Even if the decision-makers belief was not accurate, the plaintiff must show that the decision-maker knew the proffered reason was false in order to rebut the defendant's non discriminatory reason.  *See e.g., St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).  The plaintiff has wholly failed to rebut the defendant's legitimate, non-discriminatory reason.  The plaintiff relies solely on the fact that he received a final warning during

15

the time that Mitchell was considering reducing the number of Group Leaders, and that Mitchell "considered him the more assertive, some would say uppity, African American Group Leader."  Plaintiff's response, at 12.  The plaintiff provides no evidence that he was really disciplined for being "assertive" and "uppity," rather than for actually allowing mislabeled parts to reach the loading dock.[3]

This court may not second-guess employers' business decisions.  *Nix v. WLCY Radio/Rahall Comminications*, 738 F.2d 1181, 1187 (11th Cir. 1984).  The reason offered by an employer for an action "'does not have to be a reason that the judge or jurors would act on or approve' ... Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).   "Federal courts do not sit to review the accuracy of the employer's fact finding or of the employer's decision to terminate a plaintiff's employment."  *Bessemer Carraway*, 151 F.3d at 1324; citing *Nix*, 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment in the workplace.... The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a

---

[3]The plaintiff's notes in his brief, "Gestamp contends that it followed the handbook in terminating Wright.  While this is true...."  Plaintiff's response, at 13.  Even assuming plaintiff is correct that Mitchell wanted plaintiff disciplined because he was "assertive and uppity," this is neither a racially based factor nor a protected class.  The plaintiff fails to offer any evidence that he was treated differently that "assertive and uppity" employees outside his protected class.

discriminatory reason").

The court finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow his race discrimination claim to proceed to trial, the court shall grant the defendant's motion for summary judgment on this count of the complaint by separate order.

**DONE** and **ORDERED** this the 1st day of October, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

17